HARTZ, Circuit Judge,
concurring in part and dissenting in part.
I concur in all of the majority opinion except the discussions of state preemption and § 1983.
With respect to preemption of the Ordinance by the New Mexico Telecommunications Act (NMTA), I am not as confident as the majority that none of the Ordinance is preempted. It seems to me that the “best interest of the public” provision in the Ordinance, § 27-3.4, could undermine a Public Regulation Commission determination to grant a certifícate of public convenience and necessity. Nevertheless, I agree that none of the Ordinance that survives federal preemption would be preempted by state law; so it is unnecessary for me to explore the full extent of possible preemption by the NMTA.
As for § 1983, I respectfully dissent from the majority’s holding that Qwest cannot pursue a § 1983 claim. In my view, 47 U.S.C. § 253 contains rights-creating language, and the City has failed to overcome the presumption that the statutory right is enforceable under § 1983.
Section 253(a) states: “No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.” This language unambiguously confers a right on every entity providing telecommunications services. Contrary to the majority, I think that this language has an “unmistakable focus on the benefited class.” Cannon v. Univ. of Chicago, 441 U.S. 677, 691, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). The language of § 253(a) tells entities providing telecommunications services that they cannot be prohibited, directly or indirectly, from providing their services. This is not a statute, such as the one addressed in Gonzaga University v. Doe, 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002), that simply states that an enterprise will not qualify for federal funds if it engages in specific conduct that may injure third parties. Under such a statute, if the enterprise decides to forego federal funds, it is not prohibited from engaging in the injurious conduct. Here, in contrast, the benefitted parties (telecommunications service providers) are not merely incidental beneficiaries; they receive unconditional protection against injurious state or local governmental action.
The Supreme Court’s opinion in Cannon supports my view that the language of § 253(a) confers a right on telecommunications service providers. A footnote in that opinion lists several Court cases “where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case.” 441 U.S. at 690 n. 13, 99 S.Ct. 1946. One listed case is Santa Clam Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 *1276 L.Ed.2d 106 (1978), in which the pertinent statute said, “ ‘No Indian tribe ... shall deny to any person within its jurisdiction the equal protection of the laws.’ ” Cannon, 441 U.S. at 691 n. 13, 99 S.Ct. 1946 (quoting 25 U.S.C. § 1302(8)). Paraphrasing that statute and § 253(a) only slightly, I do not see how to distinguish between “no tribe shall deny equal protection to any person” and “no local regulation shall prohibit a telecommunications entity from providing service” with respect to whether they “explicitly conferf ] a right directly on a class of persons.” Id. at 690 n. 13, 99 S.Ct. 1946. (The Cannon footnote observed that the Court had recognized a private right of action whenever the statutory language “explicitly conferred a right” — with only one exception. Id. It explained that it did not recognize a private cause of action in Santa Clara, because of “a special policy against judicial interference” in tribal affairs, Cannon, 441 U.S. at 690 n. 13, 99 S.Ct. 1946; see id. at 691 n. 13, 99 S.Ct. 1946.)
Because § 253(a) contains explicit rights-conferring language, we must apply the following rule from Gonzaga: “Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983.” 536 U.S. at 284, 122 S.Ct. 2268. Overcoming the presumption is difficult. “The State may rebut this presumption by showing that Congress specifically foreclosed a remedy under § 1983 ... either expressly, through specific evidence from the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.” Id. at 284-85 n. 4, 122 S.Ct. 2268 (internal citations and quotation marks omitted).
The City has failed to rebut the presumption. It devotes only one page of its answer brief to the issue. Its discussion in full is:
b. Section 253 Remedies Foreclose Section 1983 Remedies.
The second part of the district court’s Section 1983 analysis properly concluded that the remedial provisions of Section 253 also foreclose a Section 1983 claim. As the court recognized, Congress created a circumscribed administrative enforcement scheme for Section 253(a) under Section 253(d). It requires notice and opportunity to cure, and it requires the agency to limit its preemption to the “extent necessary” to remove the prohibition. What is not envisioned under the system are claims for damages and attorney’s fees against local governments under Section 1983.
The FCC’s orders under subsection (d) are enforceable by injunctive writ in the district court under Section 401(b) after review under Section 402. Section 253(d) does not allow administrative cognizance of Section 253(c) questions. The FCC may however, with the concurrence of the Attorney General, seek judicial mandamus to remedy any violation of Section 253 under Section 401(a). A private individual may be able to bypass the Attorney General and bring a declaratory action that a particular provision of law is unenforceable in light of the Supremacy Clause, because it is in conflict with federal law. But it would be inconsistent with the explicit statutory remedy to allow a company through such an action to obtain damages and attorney’s fees which neither Section 401(a) or (b), nor 253(d) contemplates, (internal citations omitted).
Aplee. Br. at 55-56. I am not persuaded. The City has not explained how the possibility of § 1983 relief would in any way interfere with the statutory remedial scheme. It is not enough to say that § 1983 would provide remedies not available under the statute creating the right to be enforced under § 1983. Otherwise there would be absolutely no purpose in a *1277 § 1983 cause of action. The Supreme Court has recognized a § 1983 cause of action despite the availability of administrative remedies. See, e.g., Wright v. City of Roanoke Redev. & Hous. Auth., 479 U.S. 418, 424, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (“the administrative scheme of enforcement” did not foreclose other remedies); id. at 425, 107 S.Ct. 766 (requiring remedial scheme “to raise a clear inference that Congress intended to foreclose a § 1983 cause of action”).
Finally, one minor observation. I see no relevance to the creation of a private right of action in 47 U.S.C. § 274(e). Absent subsection (e), § 274 is readily distinguishable from § 253 because it confers no individual right — it contains no rights-creating language. Accordingly, there would be no presumptive cause of action under § 1983 to enforce § 274. It would therefore be totally consistent for Congress to create explicitly a cause of action for § 274 violations but not for § 253(a) violations, since § 1983 could be used to enforce only the latter.